The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. All right, thank you. You can be seated. All right, Mr. Wine, whenever you're ready. Good morning, Your Honors. Michael Wine on behalf of the appellant, Robert Fitzgerald. There are two issues presented in this appeal. The first is whether or not there was a valid conditional plea in this case under FRCP 11-A-2.  Yes, Your Honor. And the second is whether or not the court should have granted the appellant's request for suppression. I'd like to deal with the FRCP 11-A-2 issue first. Both the appellant and the government agree that this appeal was properly before this court. Okay, but that doesn't really matter, does it, the government's agreement, because it's an issue of law. And what I'm wondering about, just to kick off, Mr. Wine, is it wine? Wine, yes, Your Honor. Mr. Wine, why would we not want a bright-line rule here? I mean, I think it's pretty clear that your client would be entitled, if we find that there should be a bright-line rule, that consent has to be affirmatively manifested rather than simply be consent by silence. You're referring to the government's consent? Yes. Your Honor. And why doesn't a bright-line rule serve everybody? Well, there's a couple of different ways to answer your question. First of all, I'll point out that what the judge indicated was this was the first or second open plea that he had dealt with in approximately 20 years. So in terms of open pleas, this seems to be a more. . . What term are you using, open plea? Open plea. There was no plea agreement in writing. And because of that, it's more. . . I'm sorry, but could you move that microphone up? Yes, Your Honor. I think there you go. Yes, Your Honor. Because of that, this seems to happen more frequently with respect to open pleas. In that circumstance, certainly the court has indicated its preference is to have something in writing. It just is going to be more helpful to specify for open pleas. Then there's the precedent, both within this Court's jurisprudence as well as outside. As long as it is quite clear from the record, from the transcript, then this Court has permitted it. I would cite a case that was cited both in the Seventh Circuit case as well. . . Excuse me, it's out of the Seventh Circuit. It's called YASAK, Y-A-S-A-K. It's in the Fifth Circuit case in Bell. It's in the Eleventh Circuit case in Pierre. It's also in this Court's decision in Bundy. That talks about how a transcript is sort of like written, like a written . . . So if we forsake the bright-line rule here, do we get in a position of where we're going to be litigating when silence is sufficient and when it's not? And that, you know, in itself is a huge waster of time. Because we have to, you know, have a whole body of law on what circumstances suffice to make silence sufficient. And when is silence insufficient? And that, you know, that's . . . you admit that's a pretty litigious thing, isn't it? Well, Your Honor, I agree it's preferable. I'm not sure that the government in this case, however, was silent, and they don't indicate that they were either. Well, there's nothing in the transcript, nothing in the record. I respectfully disagree with that, Your Honor. After the judge made quite clear that my client, Mr. Fitzgerald, was going to be allowed to appeal on the one issue of the suppression, within the same page . . . And this is in Supplemental Extract 32. On the same page, after there's clarification by the trial attorney for Mr. Fitzgerald, they ask about, well, is this going to affect 2255? And then, there's a comment by Mr. Marsh, saying, yes, this will not affect 2255. So, within 30 to 60 seconds, at most, on the same page, in this case, under this court . . . under this transcript and this fact, it's almost unbelievable, respectfully, that the government didn't consent. Mr. Fine, let me interrupt you. First of all, I think Judge Ferguson makes an excellent point, practical point. In this case, you all agree that silence meant consent. Next case, the government may not agree. Then, we end up litigating. But, my point is this. When these rules are developed, before they are implemented, before they're finalized, experts testify. Judges go over these things. I mean, they really work hard to try to get these rules exactly right. Then, the Supreme Court looks at them. Then, you know, Congress is given an opportunity to comment. And, they said, these things are supposed to be in writing. But, what's happening is we're getting farther and farther and farther away from that. We're just ignoring the fact that the rule says it's supposed to be in writing. And, now, we're to the point that we're worried about what silence means. And, I'm just really concerned about the fact that we're moving away from this rule and getting farther and farther away from the requirement that it be in writing. And, we understand Your Honor's position. I just want to make the point that, partially because this was done without a written plea bargain, that may have explained it. It didn't seem as if the trial judge . . . That's a good excuse, but it doesn't excuse the requirement that it be in writing. And, I don't want to repeat, you know, as I said, certainly best practice is in writing. And, this court should specify, even on an open plea, please put something in writing to specify . . . If you had it in writing, you wouldn't have the problem of whether silence would manifest consent, would you? I mean, you would have a written plea agreement would be executed by both sides and that would be the consent, wouldn't it? A written . . . Or, would you say that there has to be affirmative consent in open court as well? Well, in most cases, that is accurate. Again, there was no written plea agreement, so it became more . . . Most of these are open pleas, no written agreement, right? Do most of these conditional plea agreements, is there a written agreement? Yes, Your Honor. It's part of a 10-page written agreement and it would perhaps specify it as part of that, that there is a conditional plea, is my understanding. Most of them do come out in written agreements. Well, there would normally . . . Here, Mr. Fitzgerald pled to the charges. He agreed to it. There was sentencing, but there was no 10- or 12-page plea agreement that limited appeal rights or anything like that. That's why . . . If there were a 10- or 12-page plea agreement, does the affirmative consent requirement apply in a written agreement or do you have to have that in open court or is it enough that both parties have executed the written agreement? Your Honor, two things. One is it would be rather moot if it wasn't in the written plea agreement. That's why this case where the judge indicated at page 35 . . . But don't we have two problems here, not just one? The first problem is the one Judge Traxler identified, is that there's no written agreement. He's reading right from the rule there about it being in writing. And then the second point is there's no affirmative consent in open court. So, you know, and our precedent seems to require affirmative consent. And so, you know, if you had one or the other, it wouldn't be so . . .  But here, aren't there two problems here, really, from the standpoint of the rules in our prior cases? Well, Your Honor, there is precedent in this court that while it's preferred to have it in writing, it's quite clear from the transcript that that's permissible. Secondly, Your Honor, there is, as I think was noted by the parties, potentially an open question on this court of which circuit to follow, which is either the Fifth Circuit or the Eleventh. However, I pointed out both those circuits, as well as this court's decision in Bundy, cite the Yasak case out of the Seventh Circuit. And in that circumstance, every case today is recorded. And you potentially could get a transcript from every case. So they describe that in Yasak . . . You mean that wasn't the case when this rule was promulgated? Well, it was 1983, Your Honor. Believe it or not, I can remember back then. So . . . We had transcripts. I think that the requirements that everything be recorded have become much more clear since then. So, it may not be necessary to go that far. Certainly, it's preferred when it's an unusual circumstance of once or twice a decade for this particular judge to have an open plea, that they also have something else in writing. But I don't think this court has to reverse precedent. I mean, there's no precedent on the second issue, Your Honor. But if you look at the one page where the judge made extremely clear to my client, and again, I want to stress, under all the cases, my client could not either, A, get a conditional plea, or he did not knowingly plead guilty if he could not have done a conditional plea. So, at the worst, that would be a remand back to the court under this court's precedent of Bundy. If I may get to the second issue, which is the merits of the trash bowl, and I want to go and suggest that this court really focus on the Tate decision. That was a case decision where, out of Maryland, and the trial judge did not have a full Franks hearing. If you look at that case's decision, it's unclear to the extent to which it was dicta or it was full precedent, but the facts of this case seem to follow Tate's quite close. And that's because in this court, in the facts— How more are you going to get than you already have? He listened to the two Baltimore—he did hold a hearing. First of all, Franks hearings are not supposed to be commonplace because they were trying to encourage police officers to get warrants, and the more you go at some of these warrants with Franks hearings, the more police are going to look for exceptions to the warrant clause, which is not good. But second of all, the district court actually held a hearing, and he listened to two Baltimore police officers who—listened to two officers involved, and they said, well, this was on the sidewalk. And against that, you offered the testimony of a girlfriend, but that didn't pertain to the specific trash bullet issue. That was just more speculative and more general evidence. And how many people testified at this hearing? I believe three, Your Honor. I thought there were two—in addition to the two officers involved with the search, I thought there were two other Baltimore police officers that testified and corroborated it. I don't know exactly the number, Your Honor. Well, I can help you. I think as far as I can see, there were at least three or at least four, considering, you know, his girlfriend, and there may well have been five. And, you know, if we hold it that inadequate as a Franks hearing, you know, we're trying to tie up police when they take the salutary step of getting a warrant. I mean, what more are you going to find out on remand that you don't already know? If the district court credits the police officers yet once again, come to the same conclusion, which was that any discrepancy was negligent, which falls below the threshold needed to impeach an otherwise valid warrant. Your Honor, the judge did not describe this as merely negligent. Quote, this was very sloppy. At the very least, it's extraordinarily sloppy police work. And to answer your question directly, Your Honor, the record's somewhat unclear to whether or not this was a full Franks hearing. The appellant described it in the appellant's brief as a hybrid. The government, however, on their brief, page 12, said that there was no full Franks hearing, that it had not even reached the point of a preliminary. So, Your Honor, I agree that it could be more clear exactly what the trial judge did here. That's why, again— Well, who else, if this isn't a full Franks hearing, who else is going to come in and testify on remand? Anybody else? Your Honor, I wasn't trial counsel, but there might be— So the answer is no? Your Honor, I'm happy to argue the merits as well. I was asking you who was going to testify on remand that hasn't already testified, and you couldn't give me a name. You just said you weren't trial counsel. Well, Your Honor, the point is the government says there was no full Franks hearing, and that's even after the appellant said it was a hybrid. Judge Keenan points out we're not always bound by what the government says, you know? It doesn't control the disposition of a court. But, Your Honor, there is a major problem with what the police officer did here, and he first went and did an incident report saying it was on the curtilage. He then went and his affidavit said it was away from the curtilage, and respectfully, in his affidavit—this is on extract page 92— he goes and says that he's basing his affidavit on a review of documents and other evidence, personal knowledge, a review of documents and other evidence. So when he did this affidavit, he had to respectfully have known that his previous report, four or five days earlier, said it was on the curtilage. He could have quite easily, respectfully, not have gone and misled the judge who actually issued the search warrant. See, I'm in my rebuttal time. I'll just briefly conclude. But he didn't do that, and that's respectfully one of the points. If you're going to go and control, for Frank's purposes, police being honest with the judges, you can't just go and respectfully say, wait a minute, this was wrong, maybe, in retrospect, or I don't remember. But what he said in the incident report was crystal clear, respectfully. It was on the curtilage. Therefore, it was not constitutional, the trash pull, and therefore he could not and should not have misled, misrepresented, to the judge who issued the search warrant. Thank you. Okay, thank you. Mr. Hanlon. Thank you, Your Honors. May it please the Court, my name is Michael Hanlon. I'm an assistant U.S. attorney from Baltimore, Maryland. I want to pick up where we left off, and that is, I mean, but I want to pick up with the first issue, which affects our practice considerably. Why isn't Judge Keenan right that a bright-line rule would help avoid problems in the future over the adequacy of silence? And it would bring us into conformity with our own precedents, and it would bring us into conformity with the rule. I remember a while back, we were dealing with a Rule 58 issue under the Rules of Civil Procedure, which says that the district court's judgment has to be rendered on a separate page from the opinion, the final judgment. And, you know, we were getting these appeals where the judgment was attached in part of the opinion, and the argument was the same as it was here. Oh, this is just a formal error, or it's just a technical error. What difference is it going to make? You're just going to reissue the same judgment. So we said, no, judgment has to be on a separate judgment page. And ever since then, we've had no problem. The judgments have been on a separate page, and the sloppiness ceased. And why wouldn't there be the same value just to have a little bit of a rap on the knuckles and say, and turn square corners, get this stuff right? Why wouldn't that be in everybody's best interest? Your Honor, I expect a rap on the knuckles for this case. In fact, I came down here expecting a rap on the knuckles in this case, and I think we deserve one. We did make a mistake. But the reason I would ask the court not to overturn the entire guilty plea, as it did in Bundy, and which I think it was required to do in Bundy, is because it would have an affirmative impact on the rights of Mr. Fitzgerald, and it would actually result not simply in returning the case for a correction of the errors, I think probably happens in the Rule 58 cases, but for an actual vacatur of a judgment, which respectfully I think is more of a rap on the knuckles than the government or the defense in this case necessarily need to learn their lesson. Rule 11H calls for the court, I think wisely, to conduct a harmless error analysis when Rule 11 errors are made. And this is a case that I think is right for that kind of harmless error analysis. Now, I do want to be very clear about something Judge Keenan said. I do agree that there should be an affirmative government consent in these cases. I'd be reluctant to come down here and advocate for a conditional plea being vindicated by silence, and that's actually not the government's theory here. We believe, and I believe, and I think I can speak for my office, that we did affirmatively consent to the terms of this conditional plea when we affirmed to the district court that the Rule 11 colloquy was correct at the end of the Rule 11 colloquy. On page 46 of the record of the second supplemental appendix, at the end of the Rule 11 proceeding, Judge Russell asked, all right, this is the bottom of the page, all right, do you believe the defendant has been properly advised, Mr. Marsh? My colleague then approached to discuss another matter with the court about this issue of the written versus nonwritten plea disposition. That goes on for a couple of pages, and then the district court returns to the government and says anything else, which I understood, and I've sat through many Rule 11s, as anything else on this Rule 11 colloquy. And, Mr. Marsh, my colleague's position for the government was to state, no, Your Honor, that's perfect. Well, but isn't it different? Isn't saying the Rule 11 colloquy is okay, isn't that different from saying the government affirmatively consents to the conditional plea agreement? I mean, the colloquy and the agreement are two different things. They're related, but it's also different. But in this instance, Your Honor, where the party's intent and our theory is that the conditional plea was memorialized on the record, which it shouldn't have been. We should have had a written conditional plea agreement. Why wasn't there a written plea agreement? I mean, Judge Stratzer read to you from the rules. Why wasn't there? You know, I had a little bit of speculation on my part, but my sense is what happened here is that there was discussion between the parties about Mr. Fitzgerald wanting to come in and do an open plea. That is a plea without a plea agreement. It happens once in a while in the District of Maryland. They're not common. They happen periodically. And then at some point, oh, by the way, he wants to reserve his right to take the plea on the motion to suppress, which was a dispositive issue. So we're thinking, okay, that satisfies Bundy. Got two decisions being made at different times, two agreements, and we make the mistake of not having it. If you have a written plea agreement executed by both parties, is that sufficient to satisfy the affirmative consent requirement in your view? If I signed an agreement and it stated that there would be a conditional plea provision? Yes. I think that would satisfy the government's affirmative consent. We'd still have to, of course, have the district court's approval, and it would have to be a dispositive issue. But you think that just the written signature would be sufficient to dispense with the requirement that the government indicate its affirmative consent to the conditional plea agreement in open court? I guess I'm imagining that I've signed my signature as counsel to the government to a document that says the defendant has the right, among other things, the defendant reserves his right to appeal an issue. Is that the hypothetical you're on? You're affirmatively consenting to the conditional nature of the plea agreement. That's what you're doing. But in this case, the problem, as I indicated to other counsel, was that neither of the two requirements was cleanly done here. There wasn't a written plea agreement, and there wasn't really an affirmative, unequivocal affirmative consent in open court. So as I see this, there are really two mistakes. One is the in writing, and the other is the affirmative consent requirement, and both of those are set off in the rules and in our own precedence. And so if we say in the face of these two deficiencies, it's all okay and we'll just overlook it and call it harmless and everything. You know, at a certain point, it just encourages sloppiness because I think the system does count on the Court of Appeals to a certain extent to say, wait a minute, folks. You're getting a little bit casual down there. We shouldn't overdo that because then it becomes over-technical and we get a lot of dot your I's, cross your T's, remands, and the thing. So there's a danger of overdoing it. But there's also a danger of underdoing it and saying, well, no, you know, no problem. We'll just look the other way. And this strikes me as the kind of thing when you compound the errors that we might be getting a little bit indulgent to say, oh, it's fine. Your Honor, may I say two things in response? On the first point, which is the question of whether they're compounded errors, one area in which perhaps the Court disagrees with me. But I do believe that the government affirmatively consented to this conditional plea by virtue of its assent at the end of the Rule 11 hearing. I agree that a colloquy and a conditional plea are not the same thing. But in this instance, we presented it to the district court and memorialized them at the same time. And I have to say, under Abramski and Bundy, if the court does not believe there was affirmative government consent, I think the court should send it back because I believe the courts refer to the government consent as a jurisdictional issue. Well, can't we send it back without vacating the plea? I don't think you can, Your Honor, because I think, under Bundy, that if the conditional plea is bad, that that renders the plea unknowing. But it's uncertain, unclear. I'm always reluctant to talk about the outer limits of any rule, Your Honor, but in this instance, I think I'd probably opt to have the plea vacated and we'd go back to the drawing board and do the plea. And hopefully it would go through again. I think that would be unfortunate. But frankly, I think we'd be postponing another problem if we don't resolve it one way or the other. I think it could be resolved today by addressing the issue on the merits. But reluctantly, I'd have to say I think the plea would have to go back and be vacated. Mr. Hanlon, does the term conditional plea appear anywhere in the transcript,  None that I've been able to find, Your Honor. Again, I would argue that functionally it's the same thing under Rule 11H. It's a harmless error kind of situation. But in fairness, the term conditional plea does not mean it. I will say that Judge Russell did advise the defendant that he would reserve the right to appeal the motion to suppress. And I believe the defendant was told. I could be wrong about this. But I believe he was also told. I'm not sure if he was told that that would allow him to come back. But I would have to say that it would be implied, Your Honor, because at page 35 of the record, the court stated, You certainly retain your ability to appeal any decision the court has made with regard to a motion to suppress tangible or derivative evidence. Again, no reference to Rule 11A2. Not the term conditional plea not used. But in fairness to the district court, of course, we didn't remind the judge. But I think functionally it's the same thing. I would like to address one other issue, which I think is an important one that Judge Wilkinson brought up, and that is the issue of what does the court have to do for the parties to learn their lesson. And I read Bundy and I read Abramski, and I remember thinking to myself, the court's going to ask me that question because how many times are they going to tolerate the same error? I can represent this to the court. As a result of this case and my experience here, I directed an email to the members of the section I supervise, reminding them about the requirements of a conditional plea, including the writing requirement, the disposition requirement. I've talked to my appellate chief about doing training on the issue. I think we've taken the steps we can to take the court's advice. Well, that would help with the District of Maryland, but we have a circuit-wide obligation. That is correct, Your Honor. And that's a commendable step. But not a perfect one, Your Honor. If we adopted your view, what would keep an unscrupulous prosecutor from just remaining silent while these representations are made is to wait and see what sentence the judge gives him, gives the defendant. If he's satisfied with the sentence, I agree it's a conditional plea. If he's not satisfied with the sentence, to then say, well, I didn't agree to the conditional plea. What protection then is there from that type? Not much, Your Honor, against unscrupulous prosecutors. What I would think would be in an instance in which the court felt that the Rule 11 demonstrated the government's assent to the plea. And I do think that at the end of the day, the court has to, for the court to find that this was a conditional plea, I have to think that the court would have to agree with me that we assented to the plea under the terms of the Rule 11. If the court disagrees with that, then it probably should be a remand. Frankly, I would expect in a situation like that to be held to the statements I made during the Rule 11. If I stand up and tell a court, your colloquy is perfect, after the court has just told the defendant he has the right to appeal, I can't imagine a situation in which I would later stand up before this court and say, oh, but he didn't have a conditional plea, because I think it's my responsibility. It might not matter whether or not you stand up and agree with his question or whether or not we think the court was right in what they did. That is correct, Your Honor. But I would hope that the court would... If I'm being unscrupulous and I'm going against representations that I've made in Rule 11, and my representations... No, no, no, I understand. No, not at all, but it's a hypothetical. No, I understand. I don't take it personally, Your Honor. But the government's assent is a relevant question here because the issue is did we consent. And so whether the government agreed is relevant as part of that analysis. I think we did at the Rule 11 hearing. I think we said this is okay, this is perfect, and it was a conditional plea. And the other requirements, imperfectly, are satisfied on the substance. Admittedly, we could have done a better job. We should have done a better job. But our errors, though notable, and we deserve a rap on the knuckles, were harmless, and I would ask that the court entertain jurisdiction. So would you have us adopt a rule that if at the end of a Rule 11 proceeding the judge asks the prosecutor if there's anything else, that the government thereby waives any objection whatsoever to a Rule 11 proceeding? I think if the government affirmatively says no, that's perfect. It's hard for me to imagine how we haven't waived it. Okay. I could be wrong, Your Honor, but in this instance, and part of my reading, I guess, is also through the prism of the fact that not only do we have a record that says that, but at the same time I know that that was our intention. And admittedly, our intention doesn't scream from the record because Your Honor can't read the minds of the prosecutor at the time of the Rule 11, but in a situation where we intended for it to be a conditional plea, wanted it to be, and have affirmed it, we've got a record that could be better, but we said that's perfect. I think in this unusual case that would be enough. I can comment briefly on the Fourth Amendment issues if the court wishes to hear anything, but suffice it to say, Your Honor, I do believe that the functional equivalent of a Frank's hearing was met here. Whether we call it a Frank's hearing, a hybrid hearing, or a evidentiary hearing to determine whether a Frank's hearing ought to be made, bottom line is Judge Russell credited the testimony of two Baltimore police officers that these trash bags came off of an accessible occasion. How many people testified? Two police officers, Your Honor, and the defendant's witness. Okay. So a police officer who seized the trash, a police officer who was with him, and then the defense witness. That was enough evidence, more than enough, for the court to credit the testimony of the officers. Well, the counsel didn't say who else he put on. Correct, Your Honor, correct. I mean, if you ever get to the merits, you would have to say something should be done below that wasn't done the first time. Correct. And I don't think there was anyone else to put on. We had, essentially, the hearing. Yes. And for those reasons, Your Honor, I believe that the Fourth Amendment is. But we have this threshold problem. Correct, Your Honor. Although, even if we'd gotten past the threshold, the government would still have won because, for all intents and purposes, we had a hearing in this case. For many reasons, the district court should be affirmed on that point. I'm happy to submit, Your Honors, unless the court has questions for me. Okay. I think we understand your argument. Thank you, Your Honors. All right. Mr. Wyan. Thank you. Just to follow on what Mr. Hamm discussed, quoting from the Abramski decision from 2013 says, as we have explained, the conditions that must be expressly described in writing or at least so clearly shown on the record that there is no doubt that a conditional plea was agreed to. That's quoting Fundy. So that's this Court's precedent. Your Honor, again, there was unusual circumstances. There was no written plea. And I think that played some role. But I understand this Court wants to go and set some role for future purposes. Whether or not that requires a remand, obviously the client made it quite clear and the judge made it quite clear that he anticipated being able to appeal on this. Do you think we can have the authority to remand just for a determination as to whether or not everybody agrees that this is a conditional plea? Without vacating the entire plea. Under this Court's precedent, and, Bundy, I think respectfully, it could not have been voluntary if, you know. What if it was? What if the determination is that there is a conditional plea and you both agree to it all along? You're asking whether or not you can remand to ask the trial judge whether or not it was a conditional plea? I'm just thinking out loud. Yeah. I just certainly would, I could assure this Court that there would be something in writing if this Court did do that. But I don't, under Bundy, that one where there was other issues where it wasn't as clear because there was one issue that was not going to dispose of the appeal, that's why this Court remanded it back. Have there been, I don't really know the answer to this at all, but in those cases which have held that silence was insufficient to constitute a consent, what was the nature of the remand in those cases? Was it a remand to go back to square one or was it a remand for the limited purpose of determining whether there was affirmative consent? The Eleventh Circuit says that silence is insufficient, and in that case when it was remanded, was it a limited remand? Just put a consent on the record or whatever? Your Honor, my understanding is all of them was to basically do another plea if that was what was. I guess if it's a, yeah, I mean. But all the cases. The question on a limited remand is whether an affirmative consent at that point in time patches things up because it may give rise to the problem the Chief identified, whereas the prosecutor remains silent in order to see how later events unfold. And then you sent it for a limited remand, and having caught the gist of the court's comments and everything, the prosecutor says, well, no, I'm not consenting. I mean, the limited remand may open the door to the kind of unscrupulous practice. Your Honor, what? I want to make it clear, definitely did not occur in this case. Absolutely, and that was just my point. At worst, human error. But I'm not sure I would want to give the prosecutor the right to remain silent and give consent at a later time and have the plea agreement remain in place. You're giving one party maybe a little bit of an unfair advantage. I'm just nervous about it. Well, again, the facts of this case don't support. Yes, Your Honor. But the facts of this case are not that issue. If anything, again, it was quite obvious from the record that the government speaking within a minute of the judge making it. Of course, the advantage of a square one remand is that we get the plea agreement in writing, which is what the rule says. I mean, in one of the cases, I think it was Bundy, there was no appeal afterwards, in part because Booker had changed it. I assume, if we go back to square one, that that plea agreement will be in writing. And if we did the limited remand, it still wouldn't be in writing. And as the Chief said much earlier on in reading it, there's maybe wandering a little bit far from the text of the rule in these cases. I don't respectfully think this Court, if it did go in and find there was proper jurisdiction, necessarily will under the Fifth Circuit case of Bell and the Seventh Circuit case of Yasak. If I may finish up, I see my time has expired. Very, very quickly. Yes. Again, I think we've spoken on the preliminary issue, but I do want to go in and ask this Court to go and review the Tate case because I think there's a lot of similarities on the merits. And respectfully, there are three types of people who understand quite clearly what curtilage means. If you walk on Main Street, they may understand it has something to do with a house. But three types of people specifically know exactly what curtilage means. Defense counsels, judges, and police officers who are doing these warrants. And respectfully, it could not have been a typographical error as a trial court held that this particular search warrant was appropriate. And without that, there respectfully would not have been constitutional violation and the case would have been presumably dismissed. Thank you. Thank you, Mr. Weyand. I note that you're court-appointed. We appreciate very much your undertaking and representation of Mr. Fitzgerald. Thank you. All right, we'll come down and greet counsel and then go into our last case.
judges: William B. Traxler, Jr., J. Harvie Wilkinson III, Barbara Milano Keenan